# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA LLC d/b/a IXO, | § | |
| Plaintiff, | § | Civil Action No. 6:15-CV-463-RWS-JDL |
| v. | § | LEAD CASE |
| ACTIAN CORPORATION, et al., | § | JURY TRIAL DEMANDED |
| Defendants. | § | |
| REALTIME DATA LLC d/b/a IXO, | § | |
| Plaintiff, | § | Civil Action No. 6:16-CV-088-RWS-JDL |
| v. | § | LEAD CASE |
| ORACLE AMERICA, INC., | § | JURY TRIAL DEMANDED |
| Defendant. | § | |

**DEFENDANTS' OBJECTIONS TO MEMORANDUM OPINION AND ORDER ON CLAIM CONSTRUCTION AND MOTION TO RECONSIDER**

On July 28, 2016, Magistrate Judge Love issued a Memorandum Opinion and Order ("Order") construing certain claim terms in the five Patents-in-Suit. Dkt. No. 362. Defendants respectfully object to certain constructions and move the Court to reconsider the Order under 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Local Rule CV-72(b).

**A.     Content Dependent/Content Independent Compression Algorithm ('513 Patent).**

Defendants object to the adopted constructions for the terms "content dependent compression algorithm" and "content independent compression algorithm" as the addition of the term "content" to the existing constructions for these terms from prior litigation would confuse the jury and ignores specific patentee statements in the intrinsic record on the meaning of these terms.

First, Defendants explained during the Markman hearing that the addition of the term "content" to the existing constructions for these terms would confuse to the jury as "content" had not been construed or defined in this litigation or in prior litigations, and the term was susceptible to multiple meanings. *See* Transcript of Markman and Motions Hearing, dated July 7, 2016 ("Tr.") at 26:24-27:19. In contrast, Defendants' proposed construction, consistent with the specification, is based on "data type" which has an agreed construction. The Order stated that Defendants raised the issue of jury confusion with the addition of "content"; however, the Order <u>did not address jury confusion</u>. *See* Order at 17. Absent a clear understanding of what is meant by "content," the jury is left without guidance on how to apply these constructions to the accused products or the asserted prior art.

Second, the Order was incorrect with respect to the patentee's statements in the intrinsic record which explained that the determination of the correct content dependent compression algorithm was based on "data type" as Defendants propose. *See* Order at 14-15.[1] During the reexamination of the related '992 Patent, the patentee explained that a particular passage in the specification, which Plaintiff relied on heavily to support adding "content" to the existing claim constructions, required recognizing

---

[1] Although the portions of the Order cited at pp. 14-15 were for the term "recognition of any characteristic …," the Court specifically incorporated this section of the Order in its discussion of the content dependent/independent terms. See Order at 19.

1

the "data type." *See* Dkt. No. 348-1 at REALTIME 039863. The Order discounted the patentee's statement because this statement was made "in the context of claims that included the 'data type' limitation." Order at 14. In fact, the amended claims of the '992 Patent to which the patentee referred at the time it made the statement – like the claims of the '513 Patent currently before the Court – **did not include the words "data type."** *See* Dkt. No. 348-1 at REALTIME 039854 (Amended claims 33 and 35). Thus, this statement cannot be attributed to any difference in claims between the '992 Patent and the '513 Patent at issue here. Accordingly, for at least the reasons discussed above, this Court should adopt the Defendants constructions for these terms based on "data type" consistent with the patentee's own statements on the meaning of these terms and to avoid jury confusion.

**B.**     **"descriptor [… indicative of said … ]" ('530 Patent, cls. 1, 2, 24; '908 Patent cls. 2, 4, 22).**

Defendants object to the adopted construction of "descriptor" because it fails to require that the descriptor be appended to the encoded data, a requirement adopted by the Federal Circuit when it construed the same term in nearly identical patents in the *Morgan Stanley* case. *See Realtime Data, LLC v. Morgan Stanley, et al.*, 554 Fed. Appx. 923, 932 (Fed. Cir. 2014). Collateral estoppel thus requires defendants' proposed construction (which is identical to the Federal Circuit's).

The four requirements for collateral estoppel are familiar. *See, e.g., Diet Goal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 811 (E.D. Tex. 2014) (citations omitted) (Collateral estoppel requires that the issue in the prior proceeding was (1) identical, (2) actually litigated, (3) necessary to the judgment, and (4) fully and fairly litigated. ) Collateral estoppel applies to common issues in actions involving different but related patents. *See Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). There is no dispute that requirements (2), (3), and (4) are met in this case. Collateral estoppel applies because, as to the first requirement, the Federal Circuit already decided the identical issue with respect to the "descriptor" terms: "'whether th[e] ["]descriptor["] must be physically attached or appended to the data, or could be associated with the data in some other fashion'" (Dkt. 41 at 30). *See* Tr. at 57:16-65:25.

2

In support of its conclusion that the Federal Circuit's construction of "descriptor" should not apply here, the Order cites to additional limitations present in some of the claims of the patents asserted in *Morgan Stanley* that "imply the descriptor must be attached to the data packet." Dkt. 41 at 31. However, the additional limitations in the *Morgan Stanley* patents cited in the Order do not suggest a different construction is warranted for the same "descriptor" term in the '530 and '908 Patents, because the "extracting" step referenced by the Federal Circuit is absent in the majority of the claims that the Federal Circuit construed in *Morgan Stanley*. Indeed, a number of claims in the *Morgan Stanley* patents do not imply any form of appendage or attachment. *See, e.g.*, U.S. Patent 7,777,651, Claim 43 (requiring only "providing a descriptor for the encoded data packet"); U.S. Patent No. 7,714,747 (same); and U.S. Patent No. 7,417,568, Claims 53, 64-67 (claiming a method "utilizing" a descriptor). Instead, the principal basis of the Federal Circuit's claim construction of descriptor was the patent specification. *See* 554 Fed. Appx. at 932. As Judge Love recognized, that specification is exactly the same in the asserted patents. Dkt. 41 at 31 ("Morgan Stanley relied upon the same disclosure that is at issue here in the patents-in-suit."). Accordingly, this Court should apply collateral estoppel and adopt Defendant's proposed construction of "descriptor [… indicative of said … ]," which is the same as the Federal Circuit's construction.

**C.     "Data accelerator"  ('530 Patent, cls. 1, 24; '908 Patent, cl. 1).**

The adopted construction of data accelerator is incorrect because it fails to include the requirements of both the claims and the specification for this term. The adopted construction disregards the requirement that courts should construe terms consistently across claims. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). It also fails to give sufficient weight to the only description of the data accelerator provided in the specification, as is required for coined terms. *E.g.*, *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004).

3

As an initial matter, claims 1 and 14 of the '530 Patent and claim 1 of the '908 Patent require the data accelerator to compress two data blocks with different compression techniques. At a minimum, this requires two encoders. The current construction fails for at least this reason.

More importantly, the current construction elevates claim differentiation—"merely a presumption," *CardSoft, LLC v. VeriFone, Inc.*, 807 F.3d 1346, 1352 (Fed. Cir. 2015)—over the established rule that "a claim term should be construed consistently with its appearance in . . . other claims of the same patent," *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). A data accelerator comprising only one or more encoders cannot perform the functionality of the sole data accelerator described in all of the claims, including: receiving data ('530, claims 1, 24; '908, claim 1); compressing data using at least two different techniques ('530, claims 1, 24; '908 claim 1); generating and storing one or more descriptors ('530 claims 2, 25; '908, claims 2, 3); retrieving data ('530, claims 3, 4, 5; '908, claims 4, 5, 6); decompressing data ('530, claim 5; '908, claim 6); and adjusting the data rate of the compressed data stream ('530, claim 26). A single compression encoder—all that is required under the adopted construction—cannot perform even one of these requirements.

Further, "data accelerator" is a coined term with no meaning in the art. Dkt. No. 317 at 21-22. Although the specification describes Figures 8 and 9 as "preferred embodiments," Dkt. No. 362 at 25, importantly, Figures 8 and 9 are also the only embodiments that actually describe the data accelerator. Every other embodiment either shows the data storage or retrieval accelerator as merely a black box, *e.g.*, '530 Patent, Figures 1, 10, 11, 12, and 14, or describes what a data accelerator does rather than what it is, *e.g.*, '530 Patent, Figures 2, 3, 4, 5, 6, 7, 13, 15. Because data accelerator is a coined term, the specification must guide its construction. *E.g.*, *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004). Figures 8 and 9 are the only place in the specification where the inventor explains in any detail what is inside the black box of the data accelerator and provides the components needed to perform all of the claimed functions of the data accelerator. Defendants' construction appropriately captures this description and should be adopted.

4

**D.      "Circuit" ('513 Patent, cls. 15, 19).**

The Order points out several instances where the '513 Patent specification refers to options between central processors and dedicated hardware. Dkt. No. 362 at 38. But in each citation, the specification is referring to encoders—not circuits—that may be implemented on central processors or dedicated hardware. And while two of the four circuits of claim 15 are undoubtedly encoders configured to compress (the second and fourth), the other two circuits (the first and third) only analyze. These analyzing circuits cannot be the encoders, and the specification is silent on what structure may comprise these circuits. Defendants' construction is consistent with the specification sole use of the word "circuit"—to describe dedicated hardware circuits. The Order discounts this as one preferred embodiment, but fails to address Defendants' argument that individual claims may cover specific embodiments, as is the case here. Dkt. No. 362 at 37 & n.11.

**E.      "dictionary" ('812 Patent, Claims 1, 4, 8, 14, 17, 21, and 18).**

The term "dictionary" "differs from its usage in ordinary parlance" (Order at 35), and therefore requires a special meaning as described in the '812 Patent. The '812 Patent describes the "dictionary" as "a set of indexes (dictionary indexes), each of which is mapped to a corresponding data block string ('code word') and at least one decoder signal ('control code word')." (*See, e.g.*, '812 Patent at Abstract, Fig. 2A, Fig. 4A, 3:37-40, 3:51-57, 5:66-6:3, 7:66-8:10, 12:19-24, 12:57-65.). The '812 Patent never describes the "dictionary" without requiring at least one "control code word." Contrary to the Order's finding, dependent claims 7 and 20 do not add the limitation "control code word." Order at 35. Rather, these dependent claims require specific types of the "control code word." Accordingly, Defendants' proposed construction should be adopted.

## CONCLUSION

For at least the reasons stated herein, Defendants respectfully object to the constructions of the terms described above and request that the Court reconsider the Memorandum Order and Opinion issued in this matter.

Dated: August 11, 2016

Respectfully submitted,

/s/ *J. Michael Woods*

Deron R. Dacus
Texas Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
(903) 705-7232
ddacus@DacusFirm.com

Thomas M. Dunham
D.C. Bar No. 448407
J. Michael Woods
D.C. Bar No. 975433
Corrine M. Saylor (pro hac vice)
D.C. Bar No. 997638

Winston & Strawn LLP
1700 K Street, N.W.
Washington, DC 20006
Telephone: (202) 282-5000
Fax: (202) 282-5100
TDunham@winston.com
MWoods@winston.com
CSdavis@winston.com

**ATTORNEYS FOR DEFENDANT DELL INC.**

/s/ *Adam R Shartzer (with permission)*

Thomas M Melsheimer
Texas State Bar No. 13922550
Fish & Richardson - Dallas
1717 Main St
Suite 5000
Dallas, TX 75201
214/747-5070
Fax: 214/747-2091
melsheimer@fr.com

Adam R Shartzer
John Wesley Samples
Timothy W Riffe
Fish & Richardson PC - Washington DC

1425 K Street, NW
Suite 1100
Washington, DC 20005
202-783-5070
Fax: 202-783-2331
shartzer@fr.com
samples@fr.com
riffe@fr.com

**ATTORNEYS FOR DEFENDANTS ECHOSTAR CORPORATION AND HUGHES NETWORK SYSTEMS, LLC**


/s/ *Olivia M Kim (with permission)*

Edward G Poplawski (CA SBN 113590)
Olivia M Kim (CA SBN 228382)
WILSON SONSINI GOODRICH & ROSATI, PC
633 West Fifth Street
Suite 1550
Los Angeles, CA 90071
323-210-2901
Fax: 866-974-7329
epoplawski@wsgr.com
okim@wsgr.com

Melissa Richards Smith
Texas State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
903/934-8450
Fax: 903/934-9257
melissa@gillamsmithlaw.com

**ATTORNEYS FOR DEFENDANTS HEWLETT-PACKARD ENTERPRISE COMPANY AND HP ENTERPRISE SERVICES, LLC**


/s/ *Gregory H. Lantier (with permission)*

Melissa Richards Smith
Texas State Bar No. 24001351
GILLAM & SMITH, LLP

7

303 South Washington Avenue  
Marshall, TX 75670  
903/934-8450  
Fax: 903/934-9257  
melissa@gillamsmithlaw.com

Gregory H. Lantier  
WILMER CUTLER PICKERING HALE & DORR LLP  
1875 Pennsylvania Avenue, NW  
Washington, DC 20006  
(202) 663-6000  
gregory.lantier@wilmerhale.com

Monica Grewal (MA SBN 659449)  
(admitted *pro hac vice*)  
WILMER CUTLER PICKERING HALE & DORR - BOSTON  
60 State Street  
Boston, MA 02109  
617-526-6000  
Fax: 617-526-5000  
monica.grewal@wilmerhale.com

Matthew J. Hawkinson  
WILMER CUTLER PICKERING HALE & DORR LLP  
350 South Grand Avenue, Suite 2100  
Los Angeles, California 90071  
(213) 443-5300  
matthew.hawkinson@wilmerhale.com

**ATTORNEYS FOR DEFENDANT ORACLE AMERICA, INC.**

/s/ *Matthew P. Chiarizio (with permission)*

John R. Emerson  
Texas Bar No. 24002053  
russ.emerson@haynesboone.com  
Matthew P. Chiarizio  
Texas Bar No. 24087294  
matthew.chiarizio@haynesboone.com

HAYNES AND BOONE, LLP  
2323 Victory Avenue, Suite 700  
Dallas, Texas 75219

(214) 651-5000 (telephone)
(214) 200-0615 (fax)

**ATTORNEYS FOR DEFENDANT
RIVERBED TECHNOLOGY, INC.**

## CERTIFICATE OF SERVICE

 The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                   */s/ Melissa Smith*