**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **REALTIME DATA, LLC,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | **CIVIL ACTION NO. 6:16-CV-88** |
| | § | **RWS-JDL** |
| | § | |
| | § | **LEAD CASE** |
| **V.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **ORACLE AMERICA, INC.,** | § | |
| **HEWLETT PACKARD ENTERPRISE** | § | |
| **COMPANY, and HP ENTERPRISE** | § | |
| **SERVICES, LLC,** | § | |
| | § | |
| ***Defendants.*** | § | |

**MEMORANDUM OPINION AND ORDER**

This claim construction opinion construes a single disputed claim term in U.S. Patent No. 9,054,728 ("the '728 Patent"). Plaintiff Realtime Data, LLC alleges that Defendants infringe the '728 Patent as well as U.S. Patent No. 6,597,812 ("the '812 Patent"), U.S. Patent No. 7,161,506 ("the '506 Patent), U.S. Patent No. 7,358,867 ("the '867 Patent"), and U.S. Patent No. 7,395,345 ("the '345 Patent"). However, there are no disputed terms for the other asserted patents. Plaintiff filed an Opening Claim Construction Brief (Doc. No. 38), to which Defendants Oracle America, Inc., Hewlett Packard Enterprise Co., and HP Enterprise Services, LLC (collectively "Defendants") filed a Response (Doc. No. 49), and Plaintiff filed a Reply (Doc. No. 51). The parties additionally submitted a Joint Claim Construction Chart pursuant to P.R. 4-5(d). (Doc. No. 28.) Upon consideration of the parties' arguments and for the reasons stated herein, the Court adopts the constructions set forth below.

## OVERVIEW OF THE PATENT

The ’728 Patent relates to compressing data blocks using different compression encoders. ’728 Patent, at 3:59-5:11. The particular compression encoder used is based on an analysis of the data requiring compression. *Id.* The ’728 Patent is titled “Data Compression Systems and Methods.” Claim 24 of the ’728 Patent contains the claim term in dispute:

> 24. A system for compressing data comprising[:]
> a processor;
> one or more data compression encoders; and
> a default data compression encoder;
> wherein the processor is configured:
> to analyze data within a data block to identify one or more parameters or attributes of the data wherein the analyzing of the data within the data block to identify the one or more parameters or attributes of the data excludes analyzing based solely on a descriptor that is indicative of the one or more parameters or attributes of the data within the data block; and
> to compress the data block to provide a compressed data block, wherein if one or more encoders are associated with the one or more parameters or attributes of the data, compressing the data block with at least one of the one or more data compression encoders, otherwise compressing the data block with the default data compression encoder.

## LEGAL STANDARD

“It is a ‘bedrock principle’ of patent law that ‘the claims of a patent define the invention to which the patentee is entitled the right to exclude.” *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent’s intrinsic evidence to define the patented invention’s scope. *Id.* at 1313-1314; *Bell Atl. Network Servs., Inc. v. Covad Commc’ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification, and the prosecution history. *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their

ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003). Claim language guides the Court's construction of claim terms. *Phillips,* 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of

the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer . . . must be effected with 'reasonable clarity and deliberateness.'") (citations omitted)). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic

evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

In patent construction, "subsidiary fact finding is sometimes necessary" and the court "may have to make 'credibility judgments' about witnesses." *Teva v. Sandoz*, 135 S. Ct. 831, 838 (2015). In some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Id.* at 841. "If a district court resolves a dispute between experts and makes a factual finding that, in general, a certain term of art had a particular meaning to a person of ordinary skill in the art at the time of the invention, the district court must then conduct a legal analysis: whether a skilled artisan would ascribe that same meaning to that term *in the context of the specific patent claim under review*." *Id.* (emphasis in original). When the court makes subsidiary factual findings about the

extrinsic evidence in consideration of the "evidentiary underpinnings" of claim construction, those findings are reviewed for clear error on appeal. *Id.*

## DISCUSSION

### I. Disputed Claim Term: "one or more encoders are associated with the one or more parameters or attributes of the data" ('728 Patent, claim 24)

| Claim Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| "one or more encoders are associated with the one or more parameters or attributes of the data"<br><br>('728 Patent, claim 24) | No construction necessary | one or more encoders are selected based on the encoder's (or encoders') ability to effectively encode the data type of the data block |

Plaintiff argues that the claim phrase at issue "uses plain words readily understandable to a person of ordinary skill." (Doc. No. 38, at 6.) According to Plaintiff, Defendants' construction would improperly "import the 'data type' limitation in place of the plain phrase 'parameters or attributes.'" (*See* Doc. No. 38, at 6) Plaintiff asserts that this is similar to arguments defendants made in another recent claim construction proceeding, where the Court rejected those defendants' attempt to limit the claim phrase "characteristic, attribute, or parameter" to "data type." (*See id.*); *see Realtime Data, LLC v. Actian Corp. et al.*, Case No. 6:15-cv-463-RWS-JDL, Doc. No. 362, "Memorandum Opinion and Order" (E.D. Tex. July 28, 2016) ("*Actian*"). Plaintiff also argues that Defendants' construction improperly changes the claim language "are associated with" to "selected based on." (Doc. No. 38, at 7.)

Defendants respond that the specification discloses that "encoders 'associated with' the content of the data block are used 'if the data type of the data block is identified.'" (Doc. No. 49, at 3 (citing '728 Patent, at 4:19-45).) Defendants argue that "[t]here is ***no*** disclosure in the

specification that would support finding that encoding techniques could be selected for association with any other parameter or attribute of the data." (Doc. No. 49, at 3 (emphasis in original).) Defendants do not address Plaintiff's argument that this issue is similar to the dispute that the Court resolved in *Actian*.

Claim 24 of the '728 Patent recites in relevant part: "to analyze data within a data block to identify one or more parameters or attributes of the data . . .; and to compress the data block to provide a compressed data block, wherein if *one or more encoders are associated with the one or more parameters or attributes of the data*, compressing the data block with at least one of the one or more data compression encoders, otherwise compressing the data block with the default data compression encoder." '728 Patent, Claim 24 (emphasis added).

The '728 Patent specification, in turn, discloses that:

> A content dependent data recognition module 1300 analyzes the incoming data stream to recognize data types, data structures, data block formats, file substructures, file types, and/or any other parameters that may be indicative of either the data type/content of a given data block or the appropriate data compression algorithm or algorithms (in serial or in parallel) to be applied.

'728 Patent, at 16:22-28; *see also* 23:7-13. This language indicates that any of the parameters listed may be associated with an appropriate data compression.

The Court came to a similar conclusion in *Actian*. *Actian* addressed terms of United States Patent No. 8,643,513 ("the '513 Patent"). The '728 Patent is a continuation of the '513 Patent and the two patents share substantially the same specification. In *Actian*, the Court construed the '513 Patent claim term "recognition of any characteristic, attribute, or parameter that is indicative of an appropriate content dependent algorithm." *Actian*, at 9-15. The Court relied on the same specification passage reproduced above in rejecting the *Actian* defendants' arguments that the phrase "characteristic, attribute, or parameter" was limited solely to data type. *Actian*, at 12. Those rejected arguments are similar to the arguments that Defendants make here.

Specifically, Defendants emphasize the same disclosure referenced by the defendants in *Actian*:

> It is to be understood that the encoding techniques are selected based upon their ability to effectively encode different types of input data. It is to be appreciated that a full complement of encoders and or codecs are preferably selected to provide a broad coverage of existing and future data types.

'728 Patent, at 16:44-49; *see Actian*, at 12. However, these "preferred embodiments cannot exclude other parameters that may be used." *Actian*, at 12. This disclosure is merely illustrative. It must be read in context with other portions of the specification, including passages emphasizing "maintaining ***an association between*** encoder types and data types, data structures, data block formats, file substructure, and/or file types." '728 Patent, at 4:49-51 (emphasis added).

Defendants assert that "[t]here is ***no*** disclosure in the specification that would support finding that encoding techniques could be selected for association with any other parameter or attribute of the data." (Doc. No. 49, at 3 (emphasis in original).) As a threshold matter, Defendants' arguments assume that it is proper to equate the "associated with" language in the claim to "selected based on." But beyond setting forth the above-reproduced passage of the specification, Defendants provide no affirmative basis for equating "associated with" and "selected based on." The Court sees no reason to swap these phrases. As to the substance of Defendants' argument, the Court finds, as described *supra*, that the specification ***does*** disclose that the claim phrase "one or more encoders are associated with the one or more parameters or attributes of the data" encompasses more than just "data type." *See* '728 Patent, at 16:22-28; 23:7-13; 4:49-51.

In a footnote, Defendants emphasize that they are not seeking a construction specifically of the term "parameters or attributes," which occurs four times in the claim. (Doc. No. 49, at 3

n. 2.) Instead, Defendants argue that they "merely seek" a construction of the larger "one or more encoders are associated with . . ." phrase. (*Id.*) This argument draws too thin a distinction between the different portions of the patent claim. Leaving the phrase "parameters or attributes" to be understood by its plain and ordinary meaning in three instances, but in a fourth instance limiting a term including that phrase to cover only "data type," makes little sense. Indeed, the sentence following Defendants' footnote states that "[i]n the '728 patent, the encoders 'associated with' the content of the data block are used '***if the data type of the data block is identified***.'" (Doc. No. 49, at 3 (citing '728 Patent, at 4:19-45).) But Claim 24 of the '728 Patent recites "analyze data within a data block ***to identify one or more parameters or attributes*** of the data." Despite their footnote to the contrary, Defendants are effectively conflating "parameters or attributes" with "data type" in contexts other than the "one or more encoders are associated with . . ." term. More importantly, the effect of limiting the claim term at issue to "data type" would be to limit the scope of the ***overall*** claim, even if the other instances of that phrase were not affirmatively construed.

Defendants' other arguments are equally unpersuasive. Defendants attempt to distinguish relevant portions of the patent specification by arguing that they are related to other inventive steps. For instance, Defendants argue that certain passages in the specification are related to parameters for "identifying," "analyzing," or "maintaining" data for data compression, not "***how*** the data compression algorithms are 'associated with' those parameters." (Doc. No. 49, at 3-4.) Distinguishing portions of the specification with phrases such as "indicative of the appropriate data compression algorithm" and "maintaining an association between . . ." while at the same time asserting that "associated with" is the same as "selected based upon" lacks support in the

record. Again, Defendants draw too fine a distinction between the words of the claim and the patent specification.

The Court therefore finds that "one or more encoders are associated with the one or more parameters or attributes of the data" is understood by its plain and ordinary meaning and requires no construction.

## II. Agreed-Upon Claim Terms

The parties also submitted the following terms for which they agreed on constructions:

| Term | Court's Construction |
|---|---|
| "single data compression encoder"<br><br>('728 Patent, claims 1, 17) | one data compression encoder |
| "data expansion"<br><br>('728 Patent, claim 17) | representation of data with more bits |
| "accelerated data storage and retrieval"<br><br>('812 Patent, claim 30) | compressing and storing data in less time than data can be stored in uncompressed form; and retrieving and decompressing data in less time than data can be retrieved in uncompressed form |

The parties also agree that terms construed in the *Actian* case should be construed the same for the patents asserted in this matter. (*See* Doc. No. 28, Ex. A, at 1.)

The Court, having reviewed the parties' agreed constructions, as well as the asserted claims, specifications, prosecution history, and Claim Construction Order in the *Actian* case (Case No. 6:15-cv-463, Doc. No. 362) finds the parties' agreed constructions appropriate and construes the terms as set forth above.

## CONCLUSION

For the foregoing reasons, the Court adopts the constructions set forth above.

**So ORDERED and SIGNED this 28th day of October, 2016.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE