IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **REALTIME DATA, LLC,** | § § § | |
| *Plaintiff,* | § § § | **CIVIL ACTION NO. 6:16-CV-00088 RWS-JDL** |
| | § § § | **LEAD CASE** |
| v. | § § | **JURY TRIAL DEMANDED** |
| **ORACLE AMERICA, INC.,** | § § § § | |
| *Defendant.* | § | |

## <u>SEALED MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Oracle America, Inc.'s ("Oracle") Motion to Exclude the Testimony and Opinions of Plaintiff's Damages Expert Robert Mills. (Doc. No. 107.) Plaintiff Realtime Data, LLC ("Realtime") has filed a Response. (Doc. No. 121.)

For the reasons stated herein, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Oracle's Motion. (Doc. Nos. 107.)

## I. BACKGROUND

Realtime alleges that Oracle infringes certain claims of five U.S. Patents. The Asserted Patents generally relate to different systems and methods of data compression. Specifically, Realtime alleges that Oracle's SecureFiles, ZFS, and Database In-Memory ("DBIM") products infringe the Asserted Claims of the Asserted Patents.

Realtime has designated Mr. Robert Mills as a Damages Expert in this matter. Mr. Mills opines that Realtime is entitled to a reasonable royalty due to Oracle's sales of the Accused Products. In his determination of the proper royalty base, Mr. Mills determined the "revenue

1

generated from U.S. sales of accused Oracle products and support services tied to U.S. sales of accused Oracle products . . . ." (Doc. No.107, Ex. 1 ("Mills Rep."), ¶181.) Mr. Mills then multiplied this value by apportionment ranges provided by one of Realtime's technical experts, Dr. Arthur Keller, to arrive at his royalty base figure. (*See id.*) Mr. Mills stated at his deposition that he had no independent opinions regarding the appropriate apportionment factors. (Doc. No. 107, Ex. 2 ("Mills Dep."), 124:7-16.)

## II. LEGAL STANDARD

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. FED.R.EVID. 702.

The Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993).

## III. DISCUSSION

Oracle seeks to exclude Mr. Mills' opinions and testimony on two grounds. Specifically, Oracle argues that 1) Mr. Mills improperly included the sales of support services, *i.e.* convoyed sales, in the royalty base; and 2) to the extent the opinions of Dr. Keller are excluded, Mr. Mills' testimony regarding apportionment should likewise be excluded. (Doc. No. 107, at 1.)

Realtime responds that 1) Mr. Mills adequately tied the sales of support services to the sales of the Accused Products such that it was permissible for him to include the sales of support services in the royalty base; 2) Dr. Keller performed a sound apportionment analysis to support

Mr. Mills' opinions, but if Dr. Keller's opinions are excluded, Mr. Mills should be permitted to amend his report. (Doc. No. 121, at 1-2.)

### 1. Convoyed Sales

The parties primarily dispute whether Mr. Mills may include convoyed sales in his royalty base calculation.

A "convoyed sale," also known as a "collateral sale," refers to the "relationship between the sale of a patented product and a functionally associated non-patented product." *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008). Convoyed sales do not include "items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage." *Rite-Hite Corp. v. Kelley Co. Inc.*, 56 F.3d 1538, 1550 (Fed. Cir. 1998).

Realtime cites to *Interactive Pictures* and *Fujifilm* for the conclusion that it is proper to include convoyed sales in the royalty base. *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001); *Fujifilm Corp. v. Benum*, 605 F.3d 1366, 1373 (Fed. Cir. 2010). In *Interactive Pictures*, the Federal Circuit upheld a jury verdict of $1 million. *Id.* at 1375, 1386. Plaintiff's damages expert had computed this value by using projected future sales for all of Defendant's products as the royalty base, even though only a subset of Defendant's products were accused of infringement. *Id.* at 1384. Plaintiff argued that even though not all of Defendant's products infringed the Asserted Patents, the accused products were bundled with sales of Defendant's other products and drove the overall sales of Defendant's products. *Id.* On that basis, Plaintiff argued that it was proper for the royalty base to account for projected revenue from all of Defendant's products. *Id.* The Federal Circuit agreed, stating that Plaintiff's damages expert "permissibly included all Infinite products in the royalty base, and that

[Plaintiff's expert] did not provide for an unfair double recovery by factoring the bundling and convoying sales into the royalty rate. The jury was entitled to rely on evidence of bundling and convoyed sales in determining the proper scope of the royalty base." *Id.* at 1385 (citing *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1559 (Fed. Cir. 1983)).

In *Fujifilm*, the Federal Circuit also upheld the jury's damages award, which included a royalty rate of $2.00 per infringing product. *Fujifilm*, 605 F.3d at 1372-73. According to the Federal Circuit, Plaintiff's expert had opined that "in a hypothetical negotiation the royalty rate would have changed inversely to the royalty-base changes, resulting in a consistent royalty amount." *Id.* at 1372. In other words, Plaintiff's expert provided an example where convoyed sales were included in the royalty base, but the royalty rate was lower and an example where convoyed sales were not included in the royalty base, but were considered in reaching a higher royalty rate. *Id.* at 1372-73. Citing *Interactive*, the Federal Circuit agreed that the jury was entitled to rely on evidence of bundling and convoyed sales in determining the royalty base. *Id.*

Meanwhile, Oracle cites *Rite-Hite* and *Micro Chemical* for the proposition that convoyed sales may not be included in the royalty base. In *Rite-Hite*, the Court addressed the question of whether collateral sales may be considered in a lost profits calculation based on the entire market value rule. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 n.9 (Fed. Cir. 1995). In a footnote, the Federal Circuit stated "[the] issue of royalty base is not to be confused with the relevance of anticipated collateral sales to the determination of a reasonable royalty rate." *Id.* (*citing Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1559 (Fed. Cir. 1983). In *Micro Chemical*, in affirming the district court's consideration of certain expert testimony during trial, noted that "[b]efore trial, the district court ruled that Micro Chemical could not include sales of non-patented items in the royalty base but could demonstrate that those sales were relevant in

4

determining a reasonable royalty. That ruling is consistent with one of the *Georgia–Pacific* factors." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003) (*citing Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971)).

The Federal Circuit's explicit statements in *Interactive Pictures* and *Fujifilm* govern here. Both of these cases specifically dealt with the issue of whether it was proper to include convoyed sales in both the royalty base and rate. On the other hand, *Rite-Hite* and *Micro Chemical* make comments regarding the consideration of convoyed sales in the royalty base that are unclear at best. *Rite-Hite's* comment in a footnote is ambiguous as to whether it would be improper to consider convoyed sales in calculating the royalty base. *Rite-Hite*, 56 F.3d at 1549. Meanwhile, *Micro Chemical* does not offer any explanation for why the district court initially decided to exclude the opinions of the plaintiff's expert regarding "sales of non-patented items in the royalty base." *Micro Chem.*, 317 F.3d at 1393. Although the accused products at issue in *Interactive Pictures* and *Fujifilm* did not necessitate an apportionment analysis as part of the damages calculations, these cases still indicate that convoyed sales may be considered in calculating a royalty base.

This analysis, however, does not end the inquiry. In the context of the entire market value rule, the Federal Circuit has cautioned against the prejudicial impact that a large royalty base may have on the jury. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (the disclosure of the full product revenue for an allegedly infringing product "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue.") In order to safeguard against this concern, as well as meet the admissibility standards prescribed by *Daubert*, an expert who wishes to include convoyed sales

5

in a royalty base must at least present a clear explanation of 1) why and how the purported convoyed sales are tied to the sales of the accused products and 2) what value of the royalty base is attributable to the accused products themselves versus the convoyed sales. Further, as the Federal Circuit explained in *Rite-Hite*, "[the] issue of royalty base is not to be confused with the relevance of anticipated collateral sales to the determination of a reasonable royalty rate." *Rite-Hite*, 56 F.3d at 1549 n.9. In other words, it is not appropriate to adjust the royalty base due to collateral sales in the midst of the *Georgia-Pacific* analysis—any consideration of collateral sales in this context should be related to the adjustment of the royalty rate. And again, in adjusting the royalty rate due to collateral sales, the analysis should likewise be clear as to why and how the expert believes the collateral sales are tied to the sales of the accused products, and how this connection impacts the royalty rate. With these conditions met, it may be appropriate to include convoyed sales in the consideration of both the royalty base and rate. *See, e.g.*, *Fujifilm*, 605 F.3d at 1372-73.

Mr. Mills has failed to take any of these measures in his expert report. In fact, in his analysis, Mr. Mills discusses Oracle's support services almost solely in the context of the *Georgia-Pacific* factors 1-14, except to state in calculating the ultimate royalty under factor 15 that his royalty base includes "revenue generated from U.S. sales of the accused Riverbed products and supports services tied to U.S. sales of accused Riverbed products." (Mills Rep., ¶181.) Nor can Realtime lay the proper foundation to tie convoyed sales to the accused products by simply presenting supporting facts in its response to Oracle's motion; the basis for including convoyed sales—both in the context of the royalty rate and base—must be clearly set forth in Mr. Mills' report.

## 2. Apportionment Value

As stated in the Court's Memorandum Opinion and Order regarding Dr. Keller's opinions and testimony, Dr. Keller is not qualified to provide a final apportionment value as an input into Mr. Mills' reasonable royalty calculation. Instead, Dr. Keller's opinions about the technical value of the infringing aspect of the accused products may be an input into Mr. Mills' ultimate opinion about the proper apportionment value attributable to the infringing aspect of the accused products.

Relatedly, if Mr. Mills chooses to continue to include convoyed sales in his royalty base assessment, he will need to determine the proper apportionment value attributable to the convoyed sales based on their connection to the patented features of the accused products.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant's Motion to Exclude the Testimony and Opinions of Plaintiff's Damages Expert Robert Mills. (Doc. No. 107.)

The Court **STRIKES** the portions of Mr. Mills' report relating to the inclusion of support services in his royalty base and rate calculations. The Court further **STRIKES** Mr. Mills' opinions relying solely on Dr. Keller for an ultimate apportionment value with respect to the allegedly infringing features of the accused products. It is further **ORDERED** that Plaintiff has ten (10) days from the date of this Order to serve Defendant with a Supplemental Expert Report from Mr. Mills providing opinions for an ultimate apportionment calculation and opinions related to convoyed sales as prescribed by this Order.

The Court further **ORDERS** Mr. Mills to appear for an additional deposition regarding his expert opinions **before April 17, 2017**. The deposition is not to exceed one (1) hour and must be directed solely toward the opinions in Mr. Mills' forthcoming Supplemental Expert Report. Plaintiff shall pay Defendant's fees and costs for this additional deposition.

If, after Oracle receives Mr. Mills' supplemental report and has had the opportunity to depose him, Oracle still seeks to bring a *Daubert* challenge with respect to this testimony, the deadline to file such a motion is April 17, 2017. Realtime will have seven (7) days from the filing of such a motion to file a Response.

Within seven (7) days of the issuance of this Order, the parties shall file a notice with the Court as to whether this Order can be unsealed, or request appropriate redaction.

**So ORDERED and SIGNED this 22nd day of March, 2017.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE